Good morning, Your Honors. Charles Marshall appearing on behalf of my clients, the plaintiffs in this matter and the appellants. I think the two fundamental issues that should be addressed in my time presenting my client's case on appeal, which, by the way, at this point I reserve five minutes for rebuttal subject to amendment. What does that mean, subject to amendment? Well, depending on how my time goes with this presentation. Let me also explain that these are estimates. We don't necessarily need the full 15 minutes just because we say it, or we may need more. Okay. So keep in mind that we may well determine that 15 minutes is not required for this case. All right. That's understood. The two issues that I think are fundamental, and they're the issues that led this case to be appealed, relate to where a foreclosure action is brought and the property has not gone to sale. In other words, essentially a pre-auction sale. That's one fundamental issue. And, by the way, my clients appreciate Molly Dwyer, the clerk of the Ninth Circuit Court out of San Francisco, making available directing both parties to provide supplemental briefing related to the Evenover v. New Century mortgage decision as well as the Lundy v. Saline finance decision. And what's central to those particular cases and what's central to one of the prongs, the two prongs that I'm addressing. Again, it's pre-foreclosure where the property has not gone to sale. The other fundamental issue is where assignments are alleged to be void, not merely voidable. And so those will both be fundamental to my discussion here. The first matter that I would like to note is that in reviewing this decision, I think it's important for this court, this panel, to take into account that another case that's quite similar factually and legally and on point, and it's also a pre-auction case that I handled on behalf of clients named Gusecki, Gusecki v. Bank of America. The Ninth Circuit Court of Appeal on May 20th did, after issuing an order to show cause in early May and after applicable briefing from all parties, summarily reverse and remand that particular case of mine. And I think that that decision is very applicable and salient for today's hearing and for Your Honor's consideration of the points at issue. Are you asking that we reverse and remand in light of the California Supreme Court decision in ENOVA for the district court to redo this? Well, actually, I'm just asking that you take notice that the Ninth Circuit itself did summarily remand and reverse. Another one of my cases, Gusecki v. Bank of America. Was it in light of ENOVA? It was in light of ENOVA. And it was with specific application of Lundy, that particular case, which is another case of mine. And by the way, I know this is parenthetical, but I really do believe that it weighs very greatly on today's proceeding. An example of what import these foreclosure cases have is that notwithstanding the fact that Judge Tigger in Lundy has already put forward one of the causes of action that I put forward, among several that he's allowed to go past a motion to dismiss, roffle foreclosure as a pre-auction cause of action is one of the fundamental causes of action that has gone forward in that case. And it applies directly to Barkarsi. And notwithstanding the fact that the roffle foreclosure case has gone forward, my client's property is going to sale essentially as we speak. I mean, the sale time was 930. So these matters are not academic at all. I mean, they have very compelling and important implications. Did you ask for a stay in that sale? There wasn't enough time based on a number of different variables. But it's also well settled. Is that a no? Correct. You didn't know about the sale a week ago? Yes, and there have been a number of variables. As far as two weeks ago? Well, I don't want to have the sale become a central issue in the discussion today. I just thought it was interesting that it is actually happening as we speak. I would ask Your Honor to appreciate that under the current law, under roffle foreclosure causes of action, when a property does go to sale illegally and unlawfully, then there are substantial damages. And given the fact that both the loan amount and the property value of this particular San Francisco property is in the millions of dollars, the damages caused to my client are readily available and provable when the property goes to sale. So does that moot the question of whether it should be pre-sale? No, I think it shows a compelling argument for why there should be uniformity in finding that when a notice of default is illegitimately and illegally put forward, based on broken assignments, based on missing assignments. I mean, in Barcarsi itself, this case, we have alleged that there never was an assignment to the Remington Trust. Sometimes it's a question of the assignment being late. We're alleging that the assignment simply didn't happen. And if that's the case, there is now case law, not just EVA Nova, indicating that such assignments are void. And specifically speaking to the roffle foreclosure cause of action, and that cause of action is very much at the heart of the Barcarsi case itself, you have to show three elements. You have to show an illegal or an oppressive sale. You have to show that there's some kind of prejudicial harm to the mortgager or the borrower, whoever is subject to the consequences of the sale. And then you have to tender. Speaking of EVA Nova specifically, EVA Nova has wiped out the tender requirement where you can show, you just make a predicate showing at the front end to show that the sale is void. And this should not be a high bar. One of the things that's frustrating from my point of view, handling a lot of these types of cases, is that a lot of cases, and they're not just from me, they're from foreclosure attorneys all over California, they're wiped out at the demure stage in state court and they're wiped out at the motion to dismiss stage in federal court. And one of the reasons why I think Judge Tigger's analysis in Lundy is so germane, generally and specifically to today's proceeding, is that Judge Lundy cites very specific reasons for allowing wrongful foreclosure, quiet title, and some of my other causes of action to go forward in that case. And the reasons he cites is he essentially describes his own skepticism about Glaske and now sees Glaske v. Bank of America as good law. And following that thread, he sees that, yes, we've alleged and we've made at least a preliminary predicate showing, at least for the purposes of a motion to dismiss, defeating that motion to dismiss, which we did. At the end of the five minutes, you wanted to reserve. Yes. I will spend about another minute and then I'll reserve for rebuttal. So what I think is critical to say about the Lundy analysis is that he specifically references Gomes v. Countrywide Home Loans to the point of saying where you can show a specific factual basis for your position, then your case should go forward. And that's a specific disavowal of a case that's brought up time and time again from the other side, Jenkins v. Chase. So that's a fundamental issue. I see I have four minutes left for rebuttal. I'd like to address one more case. The appellee attorney may be talking about Satterbeck v. Chase. If he does, I'll address it on rebuttal. It is a case that's used very often from defendants in these cases. That case is used to show that pre-foreclosure causes of action are not tenable in these types of cases. However, Sierrata v. U.S. Bank National Association, which on paper looks like a post-foreclosure case, it's out of the Fourth District Division I of the California Appellate Court. That case stands for the proposition that if you have a pre-auction situation, even though there the property went to sale, their analysis went to specifically can you show prejudice for wrongful foreclosure. You're now down to three minutes for rebuttal. Yes, I see that. So I just wanted to make that essential point, that I really want Sierrata to review Sierrata v. U.S. Bank National Association because quiet title, wrongful foreclosure, cancellation of instruments are all going forward. The case was remanded, and they're going forward under the principle that prejudice can be shown simply by showing that the instruments that you allege to be illegal are void. So I reserve my time for rebuttal. Thank you. Good morning, Your Honors. Jonathan Fink, Wright, Finley, and Zak on behalf of Respondents, MERS, Deutsche Bank, and Central Mortgage. A couple of things. First, I wanted to note that I am not able to respond to the issues on Kosecki, I believe he mentioned, or Sierrata because they're not mentioned in his letter brief, but I do not know that there's any real merit to any of those cases for purposes of today's hearing. Second, the letter brief that we submitted pointed out that the Supreme Court of California declined to hear the petition on Saderbach. It also declined to publish Saderbach. Saderbach remains the law in the state of California with respect to pre-foreclosure cases. And in point of fact, just the very day that we issued to the court our letter briefs, the Second Appellate District came down with two more decisions, one published, one not. The published one was the Yehudi case versus Impact Funding Corporation, and in Yehudi they again affirmed the holding in Saderbach that pre-foreclosure cases are different than post-foreclosure cases, and standing does matter. The other case, which I thought was a little interesting, was we now have the remand of the Ivanova decision that's been decided by the appellate court. And what the appellate court did on the remand of Ivanova is it followed this court's decision in Morgan to find that even if what the appellant was claiming to be true about the transaction being post-closing were the case, at worst it made the transaction voidable, not void, and therefore there was no ability to challenge the foreclosure on that basis, as this court had held in Morgan. But, of course, securitization is a bit of a red herring here. As noted by Judge Kronstadt's opinion and as noted in our briefs and as noted in the record, record title here is not to the trust. Record title here was to central mortgage. There was an assignment from the original lender, Downey, to MERS, and then an assignment from MERS to central mortgage, and that's where the foreclosure documents are proceeding. So to go into securitization is a little bit disingenuous on the part of appellants. Second, Ivanova never decided. Disingenuous? Yes. You mean he's lying? I mean it's not the issue. You may disagree with his argument, but why is it disingenuous? It's disingenuous because that's not what the record title is. To say that this is a securitization when the record title does not show a securitization is disingenuous. It's putting before the court an argument that is not based on the recorded documents. Okay. And there's no allegation in the complaint, in the second amendment complaint, to reflect any basis for stating that the record title is not correct in that regard. Counsel also said that Ivanova dealt with the void versus voidable. Point of fact, it did not. The court expressly declined to decide void versus voidable. So we're left with Saderbach, we're left with Kahn, we're left with the recent case of Yehudi, and we're left with all the Second Circuit opinions that say that even if they were correct, at worst it's voidable and there is no standing on the part of the third party to challenge based on voidability. Second Circuit? The Second Circuit, yes, Your Honor. The Glaske had relied upon the case of Arabovo, a trial court decision of the State of New York, to say New York trust law holds this is void not voidable. Arabovo was reversed. Rajaman disagreed with it. I'm just wondering why New York law matters. According to the allegations of Appellant's complaint, this was securitized into a trust that was governed by New York law. That's the only reason. I see. So this is New York law. According to their allegation that this is a trust governed by New York law. I see. As we said, there isn't any securitization at all, and California law does not support the notion that the transactions are void not voidable based upon his allegations of robo-signing, based upon his allegations of forgery concepts he misuses in his pleadings and in his brief. He doesn't... I'm trying to understand the interplay between New York and California law. Most of the law we're dealing with here is California law, right? No, Your Honor. Actually, most of the... The question of the foreclosure is in California. The foreclosure is California, but the attack he has tried to advance here is based upon an alleged defect in securitization of a trust which is governed by New York law, and therefore the New York law, at least as to that aspect, governs. The California law governs as to other aspects. But if you're going to look at whether the securitization is valid or invalid, we go back to New York law. Because that's where the trust is. And that's the governing law according to their own allegations. Okay. Lundy did not look at Kahn. It did not look at Saderbeck. It did not consider the reversal of Arabobo. It's a very thoughtful opinion by Judge Tiger who is trying to read the tea leaves, but he was not using the freshest pot. And he was not using all the cases that had held that... Or any of the cases, for that matter, that had held that pre-foreclosure is different. Even the Supreme Court in Ivanova recognized that pre-foreclosure was different. Ivanova cites to the Kahn case, notes that it's distinct from Glaske because it's pre-foreclosure. It doesn't then go to the next step and say, and Kahn was wrong. It doesn't say anything negative about Kahn at all. So we are now left with several published state court appellate opinions which hold that pre-foreclosure cases are different and do not involve the same standing issues that Ivanova was concerned with or that Glaske was concerned with. Since we have these state court appellate opinions, they actually control over the Lundy opinion, as we cited in our letter brief. When there is opinions from the state appellate court, those are to be given deference unless the Supreme Court of the state has ruled otherwise. We also, at bottom, come to the issue that despite the repeated assertions in the briefs that specific facts were pled, in reality, if you look at the pleading, the Second Amendment complaint is devoid of specific facts. What it has is conclusions, speculation, and innuendo. Under Iqbal and Twombly, that's not enough in federal court, and that's where we are. Plaintiffs, or rather appellants, sorry, have basically taken a boilerplate series of allegations and tried to say, us too, without any specific facts to show that us too really applies. If there are no other questions, I'll defer to my Correspondent's counsel for his portion. Thank you, Your Honor. Thank you, Your Honors. Good morning, Your Honors. John Steele appearing on behalf of Appellee Old Republic Default Management Services. While I join in my colleague Mr. Fink's arguments regarding the securitization issue, what I would like to specifically address is the role of a foreclosing trustee under California law and specifically the litigation of privilege afforded a trustee. It's our view that regardless of how this court decides to go with respect to whether or not EVA Nova should apply to pre-foreclosure cases, the judgment of dismissal with respect to Old Republic must still stand. California Civil Code Section 2924D provides that the mailing, publication, and delivery of notices as required by this section, as well as the performance of all procedures set forth in this article, shall constitute privileged communications under Civil Code Section 47. Civil Code Section 47, in turn, defines the privilege as applying to communications made without malice by someone with an interest in the communication to another person with an interest in the communication. Courts have routinely held that absent a showing of malice, a trustee executing its obligations under a deed of trust is protected from liability. In fact, in the Lundy v. Saline Finance decision, Judge Tigar specifically held that the foreclosing trustee in that case was protected from liability by the litigation privilege and dismissed the complaint against the trustee. And there are numerous other cases in accord. Was that the basis for Judge Cronstadt's dismissal of your client? It was in part, I believe, Your Honor. In the underlying action, we had also argued the same securitization issues and why they should not apply, but we also raised the limited role of a trustee under California law and the litigation privilege afforded to the trustee. It's important to note here that the only action taken by Old Republic with respect to plaintiff's property was the recording of a notice of trustee sale, and that occurred years after the alleged securitization, years, approximately seven years, after the assignments that are alleged to be void took place. Old Republic had no part in the securitization, had no part in those assignments. Again, its only conduct was in recording a notice of trustee sale. Your co-counsel said there wasn't securitization. I don't think I even need to address that issue, Your Honor. Well, I mean, you just said something different, that there was, and he said that there wasn't. I agree with Mr. Fink that I don't believe that there was securitization. I think the chain of title, if you look at the documents that have been recorded, it shows a complete chain of title. It shows assignments to the current beneficiary who then directed the foreclosing trustee to foreclose. Well, is there securitization or not? Your Honor, I don't know if there was a securitization. But for my purposes, for the purposes of Old Republic, it shouldn't matter because it took no part in those securitization efforts. It took no part in the assignments. It only stepped in literally a month or two before this case was filed, and its only action was filing a notice of trustee sale. And the case law is clear that a foreclosing trustee is privileged in recording those types of documents. In fact, Civil Code section 2924 goes even further. In subsection B, it provides that a trustee shall incur no liability for any good faith error resulting from reliance on information provided by the beneficiary regarding the nature and amount of default. So in this instance, Old Republic was substituted in shortly before this case was filed. The only action it took was to record a notice of trustee sale. It did so based upon representations from the beneficiary at the time sent for mortgage that the loan was in default and that the foreclosure was proper. Pursuant to section 2924B, Old Republic was entitled to rely upon those representations in proceeding to file the notice of trustee sale. Unless there are specific questions, I have nothing further. Thank you, counsel. You have two and a half minutes left. Due to my limited rebuttal time, I'm not going to address the foreclosure trustee aspect to this case. And as to the case of Sierrata v. U.S. Bank National Association, whether or not it was in my letter brief, counsel for the servicer and the other appellees specifically maintained that the law in this area is unified and that's simply not the case. So I present Sierrata v. U.S. Bank. I think it should be thoroughly reviewed because it, along with the other fourth district, first appellate case, Satterbeck v. Chase, which goes the opposite way. It clearly stands for the proposition, does Sierrata, that a pre-foreclosure cause of action can go forward. And notwithstanding the fact that this is federal court, these California property law issues all resonate in California law. And whether they're reviewed in federal court or not, the ultimate basis for them is California state law. The other aspect related to the trust issue, in this specific case, I mean, we allege that an assignment never went into a REMIC trust. And it sounds like appellees' counsel is sort of maneuvering that around to say, therefore, there's no securitization issue. We're saying there was an attempt and a claim. But yes, there's no document trail that it went into a REMIC trust. That's the problem. That's one of the fundamental problems in the case. And as to this whole issue of whether New York trust law is considered to treat these types of cases as voidable or void where there's a securitization issue at, you know, at contention, there's a case, U.S. Bank, as trustee, and there's a certain trustee that's referenced, versus Bolling. This is out of Massachusetts. And it recently held that courts have been getting it wrong and that New York trust law, a la Glaske's interpretation of it, means these types of instruments are void, not just voidable. Thank you, counsel. You're welcome, Your Honor. Thank you. The case just argued will be submitted. The court will take a ten-minute break before the final case of the day. All rise. Thank you, Your Honor.
judges: Reinhardt, Kozinski, Wardlaw